## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| S.A.H.H. HOSPITAL MANAGEMENT, LLC, S.A.H.H. INVESTMENT GROUP, LTD., S.A.H.H. MANAGEMENT, INC., | § § § § | |
| *Plaintiffs*, | § § | Civil Action No.  SA-12-CV-1069-XR |
| v. | § § | |
| SAN ANTONIO HOSPITAL MANAGEMENT, INC., SAN ANTONIO HOLDINGS, INC., and MEDCATH, INC., | § § § § § | |
| *Defendants*. | § | |

## ORDER

On this day the Court considered Plaintiffs' motion to remand (Doc. No. 9). For the following reasons, the motion is DENIED.

## I. Background

### A. Factual Background[1]

Plaintiffs S.A.H.H. Hospital Management, LLC, S.A.H.H. Investment Group, Ltd., and S.A.H.H. Management, Inc. were formed by a group of heart physicians to build a heart hospital in San Antonio ("the hospital"). In 2001, Plaintiffs formed a limited partnership with Defendants San Antonio Hospital Management, Inc. ("SAHMI") and San Antonio Holdings, Inc. ("SAH") to build and operate the hospital. SAHMI and SAH are both wholly-owned subsidiaries of Defendant Medcath, Inc. ("MedCath").

---

[1] The following factual background summary is predicated on facts alleged in Plaintiffs' Original Petition.

In August of 2010, Plaintiffs and Defendants entered into a Put/Call Agreement that provided, among other things, Defendants with the right to purchase Plaintiffs' partnership interests. Defendants exercised their purchase right in December of 2010 and the hospital was sold to a third party later that month. This case arises out of alleged misconduct associated with the sale of the hospital and with the execution and performance of the Put/Call Agreement.

**B. Procedural Background**

Plaintiffs filed their Original Petition in state court on September 18, 2012 alleging causes of action for breach of contract, fraud in the inducement, and breach of fiduciary duty. The Original Petition sought actual damages in the amount of $3.3 million and exemplary damages in the amount of $6.6 million in addition to an accounting for all proceeds of the sale of the hospital and for payments made to or withheld from Plaintiffs, pre- and post-judgment interest, costs, and attorneys' fees.

Defendants timely removed the action to this Court on November 9, 2012 based on diversity jurisdiction. Plaintiffs subsequently filed a motion to remand contending that Defendants' notice of removal failed to establish the citizenship of the parties. The Court permitted the parties to conduct discovery related to jurisdictional issues and Plaintiffs deposed Art Parker, the corporate representative of Defendants SAHMI and SAH. After Mr. Parker's deposition was taken, Defendants filed a response to the motion to remand and Plaintiffs filed a reply.

## II. Legal Standard

A federal district court has subject matter jurisdiction over a case pursuant to 28 U.S.C. § 1332 if there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000. 28 U.S.C. § 1332(a). "The party seeking to remove bears the burden of showing that federal jurisdiction exists and that removal was proper." *Mumfrey v. CVS Pharmacy, Inc.*, --- F.3d ---, 2013 WL 2476402, at *3 (5th Cir. 2013).

## III. Discussion

It is clear from the pleadings, and the parties do not dispute, that the amount in controversy requirement is satisfied, that Plaintiffs are citizens of Texas and Tennessee,[2] that Defendant MedCath, Inc. is a citizen of North Carolina,[3] that Defendant SAH is a citizen of Arizona and North Carolina,[4] and that Defendant SAHMI is a corporation organized under the laws of North Carolina. The sole issue that the Court must resolve in order to determine whether jurisdiction is proper is the location of SAHMI's principal place of business.

Plaintiffs contend that SAHMI's principal place of business is in Texas while Defendants maintain that SAHMI's principal place of business is in North Carolina. To support their positions, both sides have submitted portions of Mr. Parker's deposition transcript. Defendants also attached to their response, among other exhibits, the Declaration of Lora Ramsey, the current President, Treasurer, and Assistant Secretary of SAHMI.

---

[2] Specifically, the parties stipulated that S.A.H.H. Hospital Management, LLC and S.A.H.H. Management, Inc. are citizens of Texas and that S.A.H.H. Investment Group, Ltd. is a citizen of both Texas and Tennessee. *See* Resp., Ex. A.

[3] Defendants have asserted, and Plaintiffs do not dispute, that MedCath, Inc. is a corporation organized under the laws of North Carolina with its principal place of business in Charlotte, North Carolina. Notice of Removal ¶ 9.

[4] In their notice of removal, Defendants averred that SAH was a corporation organized under the laws of Arizona with its principal place of business in Charlotte, North Carolina. Notice of Removal ¶ 10. In their motion to compel discovery, Plaintiffs stated that they believed SAH maintained its principal place of business in San Antonio, Texas. *See* Doc. No. 12. However, in their reply in support of their motion to remand, Plaintiffs do not dispute the citizenship of SAH and instead urge that whether this Court has subject matter jurisdiction "turns on the citizenship of Defendant San Antonio Hospital Management, Inc." Reply at 1.

3

**A. Legal Standard for Determining a Corporation's Principal Place of Business**

For diversity purposes, a corporation is "deemed to be a citizen of every State . . . by which it has been incorporated and of the State . . . where it has its principal place of business." 28 U.S.C. § 1332(c)(1). The Supreme Court has held that "the phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 80 (2010). This "nerve center" is typically found at a corporation's headquarters. *Id.* at 81.

**B. The Location of SAHMI's Principal Place of Business**

As will be explained below, the Court finds that the evidence in the record establishes that SAHMI's principal place of business was in North Carolina during the time period between 2009 and 2011, which the parties identify as the relevant time period,[5] as well as at the time when Plaintiffs filed this lawsuit in state court and at the time of removal.

**1. SAHMI'S Principal Place of Business was in North Carolina Between 2009 and 2011.[6]**

Substantial evidence demonstrates that SAHMI's principal place of business was in Charlotte, North Carolina between 2009 and 2011. Mr. Parker's deposition indicates that SAHMI had four officers during that time: Ed French, Mr. Parker himself, Phil Song, and Craig Desmond. Dep. 19:3-20:6. Mr. Parker indicated that three of these officers were located in

---

[5] In their response, Defendants specifically assert that "the relevant time period" is 2009 through 2011, Resp. at 7, and Plaintiffs do not appear to dispute Defendants' assertion. Furthermore, Plaintiffs' Notice of 30(b)(6) Deposition indicated that the relevant topics of Mr. Parker's deposition were to include SAHMI's business activities since January 1, 2009 and SAHMI's officers, directors, and employees since January 1, 2009, see Resp. Ex. B, and many of the questions that were asked to Mr. Parker at his deposition concerned activity that occurred between 2009 and 2011.

[6] The Court has reviewed the record in an attempt to ascertain the nature of SAHMI's business activities during this time period. Both Plaintiffs and Defendants agree that SAHMI's business was managing the hospital, Resp. at 8 and Reply at 8, and Mr. Parker testified that, pursuant to a management agreement, SAHMI arranged to provide its management services by delegating the responsibility to MedCath, Dep. 89:12-25. SAHMI itself appears to have performed little to no activity. Indeed, evidence shows that SAHMI did not have any employees and did not cut payroll checks to anyone. Dep. 22:12-23.

Charlotte, Dep. 111:5-19, and that only one of the officers—Craig Desmond—was located in Texas, Dep. 26:20-23. Mr. Parker testified that between 2009 and 2011 the sole director of SAHMI was also located in Charlotte. Dep. 36:8-23, 111:5-9. Furthermore, Mr. Parker testified in his deposition that the decisions for SAHMI were made by "[t]he leadership in Charlotte," Dep. 112:7-9, and his testimony is corroborated by Lora Ramsey's declaration that SAHMI's business activities "have been and remain centered in, controlled, and coordinated from" offices in Charlotte. Ramsey Decl. ¶ 11. Defendants have also provided evidence that SAHMI identified its principal office as being located in Charlotte in state filings, see Resp. Ex. D,[7] and Plaintiffs implicitly concede that SAHMI ostensibly maintained its headquarters in Charlotte, Reply at 3 (urging that the Court should not use SAHMI's "headquarters" as a substitute for its principal place of business). Thus, because evidence in the record establishes that the overwhelming majority of SAHMI's officers and directors were located in Charlotte, that SAHMI's decisions were made in Charlotte, that SAHMI's activities were controlled from Charlotte, and that SAHMI ostensibly maintained its headquarters in Charlotte, the Court finds that SAHMI's principal place of business was in North Carolina between 2009 and 2011.

In their briefs, Plaintiffs contend that SAHMI's activities were actually directed and controlled from San Antonio. Plaintiffs support this contention with essentially two arguments.

First, Plaintiffs argue that SAHMI officer Craig Desmond directed and controlled SAHMI's activities from San Antonio where he served as president of the hospital. Reply at 1.[8] Plaintiffs contend that Craig Desmond's activities included direction and control of SAHMI's

---

[7] Defendants have submitted copies of Business Corporation Annual Reports that SAHMI filed with the North Carolina Secretary of State for the fiscal years ending in 2009 and 2010. In both filings, SAHMI indicated that its principal office address was in Charlotte.
[8] Plaintiffs also contend that Craig Desmond additionally served as chief executive officer of the hospital. *See* Reply at 1, 4, 5, 8. However, Mr. Parker testified that he did not recall that there was anyone with that title. Dep. 48:6-24.

5

primary activity—managing the operations of the hospital—and that his activities were "undoubtedly SAHMI activities" because he served as an officer of SAHMI. Reply at 5. However, there is no indication that Craig Desmond managed the operations of the hospital in his capacity as officer of SAHMI and, as Plaintiffs themselves strenuously assert, "[o]nly SAHMI activities matter." Reply at 5.[9] Even if the Court were persuaded by Plaintiffs' argument that Craig Desmond's managerial activities as president of the hospital also constituted SAHMI activities because he was contemporaneously a SAHMI officer, the Court would still find that SAHMI's principal place of business was in North Carolina because Craig Desmond's activities in San Antonio would be significantly outweighed by the managerial activities of the SAHMI officers who contemporaneously served as officers and employees of MedCath in Charlotte.[10]

Plaintiffs also argue that although Defendants claim that MedCath "coordinated" hospital operations from Charlotte, Defendants do not claim that MedCath "directed and controlled" hospital operations from Charlotte. Reply at 6. Plaintiffs argue that this distinction is an

[9] In their reply, Plaintiffs repeatedly argue that, in determining SAHMI's principal place of business, the Court should not consider the activities of any other legal entity. *See, e.g.*, Reply at 2 (arguing that "Defendants incorrectly emphasize the activities of SAHMI's parent, MedCath, rather than—and as directed by *Hertz*—the activities of SAHMI itself"); Reply at 5 (contending that the Court "should not treat MedCath's activities as SAHMI activities under the *Hertz* test"); Reply at 8 (asserting that the fact that MedCath's activities were directed and controlled from Charlotte "makes no difference under the test set out in *Hertz*" as to the location of SAHMI's principal place of business). In support of their position, Plaintiffs cite *S & T Oil Equipment & Machinery, Ltd. v. Juridica Investments Ltd.*, No. H-11-0542, 2011 WL 1565996 (S.D. Tex. Apr. 25, 2011), in which the district court held that a company's principal place of business could not be determined by looking to the activities of another legal entity.

[10] At the time Craig Desmond was an officer of SAHMI, Mr. Parker testified that the three other officers of SAHMI contemporaneously served as either officers or high-ranking employees of MedCath. Dep. 20:15-21. Specifically, Mr. Parker testified that SAHMI officer Ed French contemporaneously served as the president and chief executive officer of MedCath, Dep. 20:15-18, 22:5-7, and that Mr. Parker himself contemporaneously served as chief financial officer of MedCath, Dep. 17:24-18:4, 20:15-19. Mr. Parker testified that he did not know whether SAHMI officer Phil Song was an officer of MedCath but that he knew Phil Song was the vice president of MedCath's legal department. Dep. 21:21-22:4. There is no reason for the Court to find that Craig Desmond's management activities as president of the hospital should be weighted more heavily than the other officers' activities for MedCath. The Court's holding that Craig Desmond's activities should not be weighted more heavily than the activities of the other SAHMI officers is further supported by Mr. Parker's testimony indicating that Craig Desmond was not one of SAHMI's highest ranking officers. Specifically, Mr. Parker testified that during the time Craig Desmond was a SAHMI officer, Ed French was president of SAHMI, Phil Song was vice president, and Mr. Parker himself was treasurer. Dep. 19:6-9. Mr. Parker could not recall Craig Desmond's title. Dep. 19:9-10.

"outcome-determinative difference under *Hertz*." Reply at 6. Plaintiffs' argument appears inconsistent with at least two other positions that they maintain in their reply.[11] In support of their argument, Plaintiffs list reasons why they believe that Defendants have inaccurately characterized numerous management activities.[12] However, Plaintiffs' assertions do not persuade the Court that SAHMI maintained its principal place of business in Texas because, with one exception, Plaintiffs' list of management activities does not identify any activity of SAHMI

---

[11] Plaintiffs appear to be asking the Court to consider MedCath's activities in determining SAHMI's principal place of business, yet repeatedly argue elsewhere in their reply that the Court should only consider SAHMI's activities. Elsewhere in their reply Plaintiffs explicitly state that they "do not dispute that MedCath's activities were, by and large, directed and controlled from Charlotte." Reply at 8 (emphasis removed).

[12] Specifically, Plaintiffs list the following:

• purchasing—MedCath contracted with a GPO (group purchasing organization), but the SAHMI purchasing under the contract and any purchasing outside the contract were conducted in San Antonio.

• billing and collections—MedCath's billings and collections were directed and controlled from a centralized MedCath office in Dallas.

• preparing hospital cost reports—MedCath's Keith Bray, who also had no relationship with SAHMI, prepared the cost reports in Charlotte, but Parker conceded that the signatures and essential certification of accuracy may have come from Desmond in San Antonio, which would place the reports under his direction and control.

• preparing tax returns—MedCath's tax director, who also had no relationship with SAHMI, prepared the hospital's tax returns, but again, Parker concedes that they may well have been signed and filed by Desmond from San Antonio.

• preparing financial statements—MedCath provided financial policies that the hospital in San Antonio would comply with as it put together financial statements locally, in San Antonio.

• negotiating managed care contracts—MedCath negotiated and recommended these contracts but would need the hospital in San Antonio to help supply information during the process and, at the end of the negotiation, Desmond would represent SAHMI at a hospital board meeting in San Antonio and make the decision to agree and sign the contracts or reject them.

• negotiating other service contracts—MedCath provided legal resources assisting the hospital in obtaining contractual services, but the contracts were agreed to and signed by Desmond in San Antonio.

• procuring insurance—MedCath employees (either the head of risk management or the CFO), but not anyone with a role at SAHMI, purchased insurance on which the hospital was a beneficiary.

• paying for goods and services—MedCath employee Kirk Pogue, who served as CFO of the hospital and officed there with Desmond, directed and controlled this activity from San Antonio.

• providing benefits to employees—MedCath, but not anyone with a SAHMI relationship, provided benefits as a shared service to hospital employees, although the extent of the activity was to a large extent just contracting with a third-party provider who then arranged for the benefits at the hospitals locally and perhaps setting up a self-insured healthcare plan that may have been controlled locally in San Antonio, as far as Parker knew.

• arranging for capital—MedCath arranged financing and refinancing for the hospital, although the decisions to act on the proposed financing and to sign or reject the relevant agreements were made in San Antonio by Desmond and a representative from the local physician investor group.

Reply at 6-7 (emphasis removed) (footnotes omitted).

itself. Rather, Plaintiffs mainly identify activities of MedCath or of other entities.[13] The Court recognizes that Plaintiffs do correctly point out that evidence in the record shows that SAHMI itself would typically, but not always, send a representative to meetings of the hospital's governing body in San Antonio. Reply at 7; Dep. 64:20-65:5. However, the fact that SAHMI sent representatives to the governing body's meetings in San Antonio is not particularly influential for two reasons. First, the meetings were not SAHMI's board meetings but, rather, were meetings of the *hospital's* governing body. Second, even if the governing body's meetings included all of SAHMI's officers and directors, the Supreme Court has made clear that a corporation's principal place of business is "not simply [a location] where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion)." *Hertz*, 559 U.S. at 93. Accordingly, the management activities that Plaintiffs identify do not persuade the Court to find that SAHMI's activities were actually directed and controlled from anywhere other than Charlotte.

In light of the foregoing, the Court finds that Defendants have established by a preponderance of the evidence that SAHMI's nerve center, and therefore its principal place of business, was in North Carolina during 2009 through 2011.

### 2. SAHMI's Principal Place of Business was in North Carolina at the Time this Case was Filed and at the Time of Removal.

In their response and reply briefs, both sides focus on the location of SAHMI's principal place of business during the time between 2009 and 2011. However, the Supreme Court has

---

[13] Plaintiffs do also identify some activities that were, or may have been, performed by Craig Desmond. However, with one exception, Plaintiffs do not indicate or point to evidence in the record suggesting that Craig Desmond performed any of the activities in his capacity as a SAHMI officer.

8

directed that "jurisdiction is tested by the facts as they existed when the action is brought." *Smith v. Sperling*, 354 U.S. 91, 93 n.1 (1957).[14]

When Plaintiffs filed this lawsuit in state court in September of 2012 and when the case was removed to this Court in November of 2012, there can be no dispute that SAHMI's principal place of business was in North Carolina. Mr. Parker testified that Craig Desmond, the only SAHMI officer that had been located in Texas, was no longer an officer of SAHMI after the hospital was sold at the end of 2010. Dep. 19:11-14.[15] Mr. Parker's deposition further demonstrates that all of SAHMI's officers and directors were located in Charlotte when this case was filed and removed in 2012.[16] Furthermore, Mr. Parker testified that since the hospital was

---

[14] In their reply, Plaintiffs assert that "the parties' briefing focuses on the period of time before the hospital was sold when SAHMI's activities involved more than merely winding down the corporation." Reply at 2 n.2. To the extent that Plaintiffs' assertion can be construed as an argument that the Court should not focus on SAHMI's business activities as they existed at the time this lawsuit was commenced, the argument is overruled. In support of their position, Plaintiffs cite *Harris v. Black Clawson Co.*, 961 F.2d 547 (5th Cir. 1992), for the court's holding that the place of an inactive corporation's last business activity is relevant, but not dispositive, in determining the corporation's principal place of business. However, that holding—that an inactive corporation's principal place of business is not necessarily the location of its last business activity—is inapposite here for at least two reasons. First, the Fifth Circuit reached that holding by relying on an application of the "total activity" test, and the total activity test has since been rejected by the Supreme Court. *See Hertz*, 559 U.S. at 91-95. Second, it is not clear that SAHMI constitutes an entirely inactive corporation. In *Harris*, the inactive corporation had been inactive for over five years, had no office, no employees or service personnel, and no ongoing business activities at the time the lawsuit was filed. 961 F.2d at 549-50. Here, by contrast, evidence shows that SAHMI had officers, directors, business activity, and offices in Charlotte, North Carolina at the time the suit was filed and at the time of removal. *See* Dep. 15:19-16:2, 20:2-14, 37:3-8; Ramsey Decl. ¶¶ 2, 11.

[15] In his deposition, Mr. Parker explicitly testified that Craig Desmond "would not have been an officer of [SAHMI] following the sale of the hospital." Dep. 19:11-14. The Court recognizes that this statement might be somewhat inaccurate. Although Defendants' motion for leave to file a sur-reply and additional evidence was denied, the Court notes that one of the proposed exhibits that Defendants sought to submit was a declaration from Mr. Parker. Prop. Sur-Reply, Ex. C. In his declaration, Mr. Parker stated that Craig Desmond "remained nominally an officer of SAHMI until August 6, 2012." Parker Decl. ¶ 10. However, even if Craig Desmond remained an officer of SAHMI until August of 2012, it makes no difference to the holding or analysis in this opinion for at least first two reasons. First, the fact that Craig Desmond may have been an officer of SAHMI until August of 2012 does not change the fact that he was not an officer of SAHMI when the case was filed in September of 2012 and when the case was removed in December of 2012. Second, Mr. Parker's declaration makes clear that Craig Desmond "had no role in SAHMI's post-sale activities and did nothing as an officer of SAHMI" after the hospital was sold in December of 2010. Parker Decl. ¶ 10.

[16] In his deposition, Mr. Parker testified that SAHMI had two officers as of August of 2012—himself and Lora Ramsey—and that he himself resigned in December of 2012. *See* Dep. 19:3-20:6. Mr. Parker also testified that he and Lora Ramsey became SAHMI's directors sometime in 2012, Dep. 36:24-37:11, and that before that time Ed French had been the sole director of SAHMI, Dep. 36:8-16. Mr. Parker further testified that he, Lora Ramsey, and Ed French were all located in Charlotte. Dep. 111:5-15. Even if the Court had considered the declaration of Mr.

sold in late 2010, SAHMI's only business activity has been managing residual liabilities. Dep. 15:19-16:5. Nothing suggests that this activity would have been directed, controlled and coordinated from anywhere other than SAHMI's headquarters in Charlotte. To the contrary, Ms. Ramsey unequivocally states in her declaration that "[a]ll activity, strategy, and control of San Antonio Hospital Management, Inc., occurs in Charlotte, North Carolina." Ramsey Decl. ¶ 11.[17] Accordingly, the Court finds that Defendants have established by a preponderance of the evidence that SAHMI's principal place of business was in Charlotte, North Carolina at the time this case was filed and at the time of removal.

## IV. Conclusion

As a result of the foregoing discussion, the Court finds that it has subject matter jurisdiction over this case because Defendants have established by a preponderance of the evidence that there is complete diversity among the parties and that the amount in controversy exceeds $75,000. Accordingly, Plaintiffs' motion to remand (Doc. No. 9) is DENIED.

Defendants must file an answer or otherwise respond to Plaintiffs' amended complaint within 14 days of this order.

---

Parker that was submitted along with Defendants' proposed sur-reply, in which Mr. Parker declared that Craig Desmond remained nominally an officer of SAHMI until August 6, 2012, the declaration would not have altered the Court's holding or analysis because the declaration corroborates that all of SAHMI's officers and directors were located in Charlotte as of August 2012, before the case was filed and removed, and that Craig Desmond did not perform any activity for SAHMI after the hospital was sold in late 2010.

[17] The Court notes that in *Harris v. Black Clawson Co.*, the Fifth Circuit held that "as a matter of law, where a corporation has been inactive in a state for a substantial period of time"—five years in *Harris*—"that state is not the corporation's principal place of business." 961 F.2d at 551. Here, Plaintiffs have not pointed to any evidence demonstrating that SAHMI has maintained any business activity in Texas since the hospital was sold in late 2010. Thus, under *Harris*, it is possible that SAHMI's principal place of business cannot be in Texas for the sole reason that SAHMI has been inactive in Texas for over two and a half years.

SIGNED this 17th day of July, 2013.

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE